**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO.: 5:20-CR-112** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIAN A. GAUGHAN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALLEN MARTIN KENNA** | ) | |
| **Defendant.** | ) | **REQUEST FOR EMERGENCY BAIL** |
| | ) | **HEARING VIA VIDEO CONFERENCING** |

<u>**Introduction**</u>

Defendant Allen Martin Kenna, who is a pretrial defendant currently detained at the CoreCivic Northeast Ohio Correctional Center, moves the Court for an emergency bail hearing, via video conferencing, and an order granting his temporary release due to a change in his circumstances, which also restricts the preparation for his defense. Specifically, Mr. Kenna is at a heightened risk of contracting the Coronavirus of 2019 ("COVID-19") while in confinement, which according to the Centers for Disease Control and Prevention ("CDC") is a dangerous illness spreading rapidly across the world and through the Cleveland, Ohio metro area. As such, the Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

The health risk to Mr. Kenna is heightened because, despite being 18 years old, his "[c]ontinued incarceration will be a death sentence."[1] The conditions at the Northeast Ohio

---

[1] *Ohio Judges Are Releasing People From Jails to Fight Coronavirus. It's a Good Idea.*, Mother Jones (March 16, 2020) at https://www.motherjones.com, citing a statement from the ACLU of Florida, Dream Defenders, and other criminal justice reform groups, *Freedom from Cages is a Public Health Issue: Legal experts, Healthcare professionals, and Local Activists Urge Action to Immediately Decrease Miami Jail Population In Order to Save Lives Amid COVID-19 Crisis,* Medium (March 15, 2020) at https://medium.com.

Correctional Center and other similar Federal facilties, which are described in detail below, necessitates Mr. Kenna's temporary release on bail until the pandemic has ended.

During the period of release Mr. Kenna will remain quarantined at his parent's home in Cuyahoga Falls under home confinement and will abide by whatever release conditions the Court sees fit to impose, including any necessary electronic monitoring.

### **Factual Background**

### *Changed Circumstances: COVID-19 Outbreak*

As of April 8, 2020, the new strain of coronavirus which causes COVID-19, has infected over 1.3 million people, leading to at least 81,564 deaths worldwide.[2]  On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[3] Ohio Governor Mike Dewine declared a State of Emergency on March 9, 2020.[4] Additional protective measures have been taken, including a statewide stay at home order banning "[a]ll public and private gatherings of any number of people occurring outside a single household or living unit are prohibited," which is now extended to May 1, 2020.[5] This order mandates Social Distancing Requirements, which "includes maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer" and further requires Essential Business and Operations to use signage to designate six foot

---

[2] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (April 8, 2020), *at* https://www.nytimes.com (updating regularly).
[3] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://www.who.int.
[4] *Executive Order 2020-01D Declaration of Emergency*, Governor Mike Dewine (March 9, 2020) at https://www.fmcsa.dot.gov.
[5] *Amended Director's Order that All Persons Stay at Home Unless Engaged in Essential Work or Activity,* Amy Acton, M.D., MPH, Director Ohio Department of Health (April 2, 2020) at https://coronavirus.ohio.gov.

distances, make hand sanitizer readily available, and provide online and remote access.[6] As of April 8, 2020 there are 4,782 of positive cases of COVID-19 and 167 confirmed deaths in Ohio.[7] These orders and guidelines apply to institution housing inmates and are required to be followed.

### *Younger Adults are at Higher Risk in Ohio, Representing 30% of the Coronavirus Cases*

The CDC has issued guidance that individuals at higher risk of contracting COVID-19 — adults over 60 years old and people with chronic medical conditions such as lung disease, heart disease, and diabetes — take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[8] However, COVID-19 findings from the US show younger adults are being hospitalized and make up 20% of the reported cases.[9] The CDC has expressly warned "that COVID-19 can result in severe disease among persons of all ages."[10] Here in Ohio, younger people are disproportionately affected and make up 30% of the confirmed cases.[11] These confirmed cases in Ohio indicate rapid community spread, every necessary action must be taken to protect vulnerable populations of all ages and the community at large.

### *Conditions of Confinement and Spread of Coronavirus among Incarcerated Populations*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease and "[w]hile incarcerated, inmates are at an increased risk for… infection with airborne organisms, such as *M. tuberculosis,* influenza virus, and varicella-zoster virus."[12] Inmates

---

[6] *Id.*

[7] *Coronavirus (COVID-19) site*, Ohio Department of Health (April 8, 2020) at https://coronavirus.ohio.gov (updated regularly).

[8] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) at https://www.cdc.gov.

[9] *Think you're too young to be hospitalized by coronavirus? This chart shows why you're wrong.*, World Economic Forum at https://www.weforum.org.

[10] *Id.* citing a CDC report *Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19)*, CDC (March 26, 2020) at https://www.cdc.gov.

[11] *Young people represent nearly 30% of coronavirus cases in Columbus and Worthington, health commissioner says*, The Columbus Dispatch (April 7, 2020) at https://www.dispatch.com.

[12] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org.

cycle in and out of detention facilities from all over the country, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times medical care is limited.[13] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.[14] According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[15] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[16] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[17] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[18] Courts across Iran have granted 54,000 inmates furlough as part of their measures to contain coronavirus across the country.[19]

---

[13] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov.
[14] *Id*.
[15] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://law.yale.edu.
[16] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://www.theverge.com.
[17] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://www.businessinsider.com.
[18] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://www.cnn.com.
[19] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com.

### *Ohio's Response to Incarcerated Populations*

In the U.S. some jurisdictions have already taken steps to facilitate the release of elderly and sick prisoners and to reduce jail populations by discouraging arrests of non-violent misdemeanor offenses and refusing their admission into local jails.[20] Specifically, Mahoning County Sheriff Jerry Greene is refusing all non-violent misdemeanor arrests at the county jail due to the recent coronavirus outbreak, telling all officers to issue summonses.[21] Likewise, Cuyahoga County has agreed to hold mass plea and bond reduction hearings to lessen the impact of a potential coronavirus outbreak in the Cuyahoga County Jail, which per a U.S. Marshalls' report has widespread Constitutional violations throughout the facility.[22]

### *Outbreak Northeast Ohio Federal Facilities are Now a Death Sentence*

In relation to Mr. Kenna and other pretrial federal inmates before this court, U.S. Marshal Pete Elliott stated that restrictions are in place at the Northeast Ohio Correctional Center in Youngstown because of the virus, but lawyers will still be able to visit their clients.[23] However, whatever precautions initially put into place are ineffective and are clearly unable to preserve the lives of inmates under the Marshals' control and housed at local federal facilities. In an act of desperation, an inmate recorded a video on smuggled cell phone from inside a federal prison in Eastern Ohio where a coronavirus outbreak killed three inmates and infected dozens of others; shows inmates lying on beds just feet apart coughing and wheezing.[24] He states, that although

---

[20] In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners (*Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org.); see also *Facing coronavirus concerns, Collin County sheriff asks police not to bring petty criminals to jail*, The Dallas Morning News (March 12, 2020) at https://www.dallasnews.com.
[21] *Local county jails making changes due to coronavirus outbreak*, WBKN 27 (March 12, 2020) at https://www.wkbn.com.
[22] *Cuyahoga County officials will hold mass plea, bond hearings to reduce jail population over coronavirus concerns*, Cleveland.com (March 12, 2020) at https://www.cleveland.com.
[23] *Id*.
[24] *Inmate in Ohio federal prison where coronavirus outbreak has killed three records video on smuggled cellphone: 'they literally leaving us in here to die'*, Cleveland.com (April 7, 2020) at https://www.cleveland.com.

everything was fine a few days ago, a widespread outbreak has furiously spread through facility, — "they literally leaving us in here to die".[25] The video demonstrates physically or social distance is impossible while in custody, pointing out that he is forced to share a cell with another inmate who is infected with Coronavirus. Lastly, he shows a newly erected tent in the prison yard that was constructed to handle all the dead bodies, which may indicate that deaths are being under reported.[26] The conditions depicted in this video are horrifying, immoral, unconstitutional, and should shock your conscience. Everyone should be compelled to view the video. This Court must take immediate action to preserve the life of every inmate, starting with Mr. Kenna.

The Northeast Ohio Correctional Center, the Bureau of Prisons, and the U.S. Marshall Service, despite their best efforts, simply lacks the resources necessary to engage in screening and testing, institute measures to permit physical distancing, and the medical personnel to prevent the spread of the virus and save the lives of those already infected.

### The Bail Reform Act Requires Mr. Kenna's Release

#### *Changed Circumstances*

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

The circumstances that existed when Mr. Kenna was ordered detained have now changed. There is a pandemic that poses a direct risk to his health and life that is far greater if he continues to be detained during this public health crisis.

---

[25] Instagram Video, @balleralert (April 6, 2020) at https://www.instagram.com.
[26] *Id*.

Mr. Kenna is vulnerable because of his age, the unresolvable close quarters where he is being housed and the recent spreading outbreak among Northeast Ohio federal detention facilities.

Liberty is the norm and "detention prior to trial or without trials is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990)(Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See, United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986)(discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. Under analogous circumstances, when ordering a pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC," Judge Weinstein held:

> "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy."

*United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993).

This Court should consider the "total harm and benefits to prisoner and society," what the continued pretrial imprisonment of Mr. Kenna will yield, relative to the heightened health risks posed to him during this rapidly encroaching pandemic. *See, Davis v. Ayala*, 135 S. Ct. 2187, 2209

(2015)(Kennedy, J., concurring)(calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004)(reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case").

### *Preparation of Defense*

Also, it should be noted that one of the attorneys who assisting Mr. Kenna's defense, arranging various experts to evaluate him, attempted to call Mr. Kenna at the Northeast Ohio Correctional facility last Thursday, he was repeated transferred to one official after another, and was unable to speak to our client. This inability for counsel to communicated directly with Mr. Kenna in a timely manner is a violation of his Sixth Amendment right to counsel. Furthermore, even possible video conferencing would pose a threat to Mr. Kenna's health because it would require him to move out of his accommodations and expose himself possible infection. As, Mr. Kenna is forced to choose between staying alive and being able to aid in his own defense.

### **Conditions of Release are Available that Allow Mr. Keena to be Treated Humanely while also Ameliorating any Danger to the Community**

From Mr. Kenna's perspective his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that would warrant the denial of bail in this case. Given the nature of the charges, any concerns the Court or Government might have for school safety if Mr. Kenna were to be released, are temporary placated by statewide school closures due to the stay at home order, which is in effect until at least May 1st, and being followed by the Cuyahoga City School District where he

resides.[27]

Mr. Kenna would submit that during the period of release, the Court order him to home confinement and will abide by all release conditions, including electronic monitoring.

Charged individuals, who are in custody, awaiting trial, and are constitutionally presumed innocent, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.

## Conclusion

Mr. Kenna is among the vulnerable population at heightened risk of getting very sick from this illness. For all of the above reasons, Mr. Kenna should be granted release on bond.

Respectfully submitted,

/s/ Noah C. Munyer
Noah C. Munyer (0086575)
Attorney for Defendant
121 South Main Street, Suite 520
Akron, Ohio 44308
(330) 253-0785 (telephone)
(330) 253-7432 (facsimile)

## Certificate of Service

I certify on April 9, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/ Noah C. Munyer
Noah C. Munyer (0086575)
Attorney for Defendant

---

[27] *Lastest News:The Cuyahoga Falls City Schools will be closed for students 3/16 through 5/1/20*, Cuyahoga Falls City School District (March 31, 2020) at https://www.cfalls.org.